# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| In Re: | Case No. 18-40936-JMM |
|---|---|
| KENNETH ADAM JARDINE, | |
| Debtor. | Chapter 7 |

## MEMORANDUM OF DECISION

Appearances:

    Jared M. Harris, Blackfoot, Idaho, counsel for Debtor.

    Aaron Tolson, TOLSON & WAYMENT, PLLC., Ammon, Idaho, counsel for Creditor.

## INTRODUCTION

Before the Court is Debtor Kenneth Jardine's objection to a claim filed by Crista Jardine ("Creditor")[1], Doc. No. 35, and Creditor's Motion for Relief from Stay, Doc. No. 34. A hearing on the matters was held on August 17, 2022. Doc. No. 49. The parties had until August 31, 2022, to file supplemental briefing, after which the Court took the issues under advisement. *Id.* The following statements constitute the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052; 9014.[2]

---

[1] The filings refer to Creditor as "Crista Jardine," however, at the hearing on the matter, Creditor informed the Court she has since changed her last name to "Rostrom."

[2] Unless otherwise indicated, all statutory citations are to the Bankruptcy Code, Title 11 U.S.C. §§ 101–1532. Additionally, all citations to "Rule" are to the Federal Rules of Bankruptcy Procedure and all citations to "Civil Rule" are to the Federal Rules of Civil Procedure.

MEMORANDUM OF DECISION- 1

# BACKGROUND

Debtor and Creditor were married and share three children. The parties divorced, and a divorce decree (the "Decree") was entered into on August 11, 2017. The Decree concerned four key areas: the division of the parties' assets; the division of the parties' debts; the custody of the children; and the payment of child support.

Relevant here, the Decree required Debtor to make monthly child support payments of $746.49. Ex. 100 at 5. Further, Debtor and Creditor were required to split the children's medical expenses, with Debtor paying 47% of the associated costs and Creditor paying 53%. *Id.* at 6.

The Decree also provided for the division of the parties' property and debts. Several items of personal property were awarded to Creditor in the Decree, Ex. 100 at 14–18, however Creditor asserts that various itemized items of personal property allocated to her have not been turned over by Debtor. She independently calculates the collective value of these items at $15,454.[3] The Decree additionally provided that Creditor would receive the house in the divorce. *Id.* at 7 & 11. The Decree also allocated to Debtor the debt to Driscoll Smith, Ex. 100 at 19, however Creditor asserts she paid $1,249.50 to Driscoll Smith upon the sale of the home. Finally, Creditor claims that two debts secured by the house were not disclosed to her by Debtor and were omitted from the Decree. These debts totaled $45,538.55 to Dyck O'Neal and $1,627 to Todd Erikson.

---

[3] While these items of personal property are described in the Decree, there is no evidence that the state court determined the value of any of them. Instead, the values contained in the proof of claim are the Creditor's calculations.

MEMORANDUM OF DECISION- 2

Debtor filed a chapter 7 bankruptcy petition on October 15, 2018. Doc. No. 1. It was a no asset case; accordingly, the Clerk of the Court sent out a notice to creditors informing them that:

> No property appears to be available to pay creditors. Therefore, please do not file a proof of claim now. If it later appears that assets are available to pay creditors, the clerk will send you another notice telling you that you may file a proof of claim and stating the deadline.

Doc. No. 2 at ¶ 10.

Notwithstanding that notice, on November 6, 2018, Creditor filed the only proof of claim in the case in the amount of $86,000, designating it as a domestic support obligation. Ex. 101. Debtor received a discharge on February 4, 2019, Doc. No. 23, and the case was closed after the trustee filed a notice of no distribution. Doc. No. 24.

Creditor filed a state court action in Bonneville County to collect on the $86,000 claim she asserts was deemed allowed because no party objected to her proof of claim. Debtor filed a motion to reopen the bankruptcy case on April 24, 2022, in order to object to Creditor's proof of claim. Doc. No. 28. The motion was granted and the case was reopened on May 5, 2022, with the Court instructing Debtor to file his objection to Creditor's proof of claim within 30 days. Doc. No. 30. On May 18, 2022, Creditor filed a motion for relief from stay to permit her to return to state court and pursue her claim. Doc. No. 34. Debtor objected to Creditor's proof of claim on May 23, 2022, Doc. No. 35, and to Creditor's motion for relief from stay, Doc. No. 38. Creditor responded to the claim objection, asserting that principles of res judicata bar Debtor from now raising an objection to claim. Doc. No. 40.

MEMORANDUM OF DECISION- 3

# ANALYSIS

### A.    Claim Objection

#### 1.    Application of Res Judicata

Creditor argues that Debtor is now barred from objecting to her claim because Debtor did not do so when the claim was first filed and before the case was closed. As such, Creditor asserts her $86,000 claim was "deemed allowed" and Debtor cannot now object to it. The Court will explore this argument.

##### a.    Res Judicata and *Siegel*

Res judicata, also known as claim preclusion, acts to prevent a party from relitigating a cause of action. *Kelley v. S. Bay Bank (In re Kelley)*, 199 B.R. 698, 702 (9th Cir. BAP 1996). Claim preclusion prohibits lawsuits on any claims that were raised or could have been raised in a prior action. *Censo v. NewRez, LLC (In re Censo, LLC)*, 638 B.R. 416, 423 (9th Cir. BAP 2022) (citing *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002)). Claim preclusion under federal law[4] applies when there is "(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties." *Id.* (quoting *Stewart*, 297 F.3d at 956).

In the bankruptcy context, a proof of claim is deemed allowed unless a party in interest objects under § 502(a) and constitutes "*prima facie* evidence of the validity and the amount of the claim" pursuant to Bankruptcy Rule 3001(f). *In re Blackstone*, 269

---

[4] When considering the preclusive effect of a federal court judgment, or in this case, the allowing of a proof of claim in bankruptcy by operation of federal law, this Court applies the federal law of claim preclusion. *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1128 (9th Cir. 2000) (citing *Sullivan v. First Affiliated Sec., Inc.,* 813 F.2d 1368, 1376 (9th Cir. 1987)); *Investment Consultants, Inc. v. Ramirez (In re Ramirez Ramirez)*, No. 8:18-BK-13870-CB, 2020 WL 4436263, at *7 (9th Cir. BAP Aug. 3, 2020).

MEMORANDUM OF DECISION- 4

B.R. 699, 703 (Bankr. D. Idaho 2001); s*ee also* Rule 3007. The Ninth Circuit held that a "deemed allowed" claim under § 502(a) was a final judgment on the merits for purposes of res judicata. *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525 (9th Cir. 1998). In *Siegel*, a creditor filed two proofs of claim in the debtor's bankruptcy proceeding. Neither the debtor nor any other party objected, and the bankruptcy case was closed. In a subsequent state court action brought by the debtor against the creditor, the creditor moved for summary judgment arguing the debtor's action "was barred by the res judicata effect of the bankruptcy proceeding." *Id.* at 528. The Ninth Circuit held that claims allowed through bankruptcy proceedings, such as the claim objection process, are treated as final judgments for res judicata purposes. *Id.* at 530. In so holding, however, the panel did not see the need to distinguish between those claims allowed by order and those deemed allowed under § 502(a), noting the purpose of allowing claims under § 502(a) is to "relieve the court of the task of actually endorsing its allowance of the claim" when "no interested party demands it." *Id.* As such, if parties do not raise objections, "the claim will be treated in all respects as a claim allowed by the court itself" and thus is entitled to preclusive effect. *Id.*

  Debtor points out that *Siegel* has been distinguished by the Fifth Circuit, which held that a "deemed allowed" claim in a no-asset bankruptcy case is not entitled to preclusive effect in later proceedings. *Kipp Flores Architects v. Mid-Continent Cas. Co.*, 852 F.3d 405 (5th Cir. 2017). In reaching this conclusion, the Fifth Circuit considered the claims allowance process to be different when no distribution is expected—creditors are often informed they do not need to file a proof of claim and the court sets no claims

MEMORANDUM OF DECISION- 5

deadlines. *Id.* at 410–11; *see also* Rule 2002(e). Further, the panel noted the purpose of a claim is to permit a creditor to participate in a distribution—if there is no distribution, however, the proof of claim has no effect. *Id.* Because a proof of claim has little impact in a no-asset case, it would cause a greater burden on parties in interest if they were required to "monitor, object to, and litigate proofs of claim that need not even be filed." *Id.* at 413.

### b. *Siegel* Distinguished

While the Fifth Circuit's analysis in *Kipp Flores* is compelling, neither *Siegel* nor *Kipp Flores* involved a reopened bankruptcy case, which puts the case before this Court in a distinguishable procedural posture. This is because the Rules contemplate the reconsideration of previously allowed claims in reopened bankruptcy cases. Rule 3008 provides, "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order." The advisory committee notes on Rule 3008 provide:

> The rule expands § 502(j) which provides for reconsideration of an allowance only before the case is closed. Authorities have disagreed as to whether reconsideration may be had after a case has been reopened. If a case is reopened as provided in § 350(b) of the Code, reconsideration of the allowance or disallowance of a claim may be sought and granted in accordance with this rule.

(internal citations omitted). Moreover, while Civil Rule 60 provides a method by which a party may seek relief from a judgment or order, Rule 9024 includes a specific carve out in bankruptcy cases. That Rule provides that Civil Rule 60 applies in bankruptcy cases "except that [] a motion to reopen a case under the Code or for the reconsideration of an

MEMORANDUM OF DECISION- 6

order allowing or disallowing a claim against the estate entered without a contest is not subject to the one-year time limitation prescribed in Rule 60(c)…."

As such, the Rules clearly permit a bankruptcy court to reconsider previously allowed claims in a reopened bankruptcy. Here, however, because there is no prior order allowing the claim for the Court to reconsider, and because Debtor has made a timely objection to Creditor's proof of claim, the Court need not rely on Rules 3008 and 9024 in its analysis.

As noted by the panel in *Kipp Flores*, generally, the purpose of filing a proof of claim is to permit a creditor to participate in a distribution. Because no distribution will be made in a no-asset bankruptcy case, there is often no deadline set for filing either proofs of claims or objections to such claims. Such was the situation in the case at bar, where Debtor's case was designated as no-asset and creditors were informed there was no need to file a proof of claim. Doc. No. 2 at ¶ 10. As such, the Court set no deadline for either the filing of a proof of claim or an objection to such claim. On May 4, 2022, the Court entered an order reopening Debtor's case pursuant to § 350 and stating that "Debtor shall have thirty (30) days in which to file an objection to the Claim of Crista Jardine." Doc. No. 30. On May 23, 2022, Debtor timely filed an objection to Creditor's proof of claim. Doc. No. 36. Thus, because an objection has been timely filed, Creditor's claim is not deemed allowed under § 502(a) and therefore is not entitled to any preclusive effect.

MEMORANDUM OF DECISION- 7

2. **Claim Amount and Nature of the Claim**

Accordingly, the Court will now turn to the validity of the claims, and if allowed, whether such claims are nondischargeable under § 523(a)(5) or (a)(15).[5] Pursuant to Rule 3001(f), a timely filed proof of claim constitutes prima facie evidence of the validity and amount of the claim. As noted in *In re Best View Constr. & Dev., LLC*, 2021 WL 3745423, at *5 (Bankr. D. Idaho Aug. 24, 2021), the party objecting to the claim bears the burden of producing sufficient evidence to negate the prima facie validity. If the objecting party produces such evidence, the burden shifts back to the claimant who must prove entitlement to the claim by a preponderance of the evidence. *Id.*

The claim asserted by Creditor is predicated upon the Decree, which allocated certain rights and responsibilities to each party concerning assets, debts, and the custody and care of their joint children. Debtor objected on the basis that the amount asserted—$86,000—was inflated. Doc. No. 35. Further, Debtor asserts the categorization of the entire debt as a domestic support obligation was incorrect. *Id.*

a. **Child Support and Medical Expenses**

First, the Court will consider the claims for unpaid child support and medical expenses. Creditor claims Debtor, as of the petition date, owed $9,459.78 in child support. The Decree provides that Debtor owed $746 per month in child support. Ex. 100 at p. 5. Creditor attached to her proof of claim a statement demonstrating Debtor

---

[5] Determining the nondischargeability of a debt generally requires an adversary proceeding. *See* Rule 7001(6). Here, the parties waived that requirement and consented to the issues being heard as part of the claim objection. While not condoning that practice, the Court will permit it here.

MEMORANDUM OF DECISION- 8

owed Creditor $9,459.78 in unpaid support. Ex. 102. In support of his objection to Creditor's proof of claim, however, the Court finds Debtor did not present sufficient evidence to rebut Creditor's claim that Debtor owed that child support as of the petition date.

Additionally, Creditor alleges Debtor owed her $1,974.49 in medical expenses for their children as of the petition date. The Decree provides that Debtor is responsible for 47% of "health care expenses for the children not covered or paid in full by insurance, including, but not limited to orthodontic, optical, and dental expenses." Ex. 100 at p. 6. Creditor attached to her proof of claim an affidavit filed in the state court action that includes a summary of health care expenses totaling $4,201.04. Ex. 101 at p. 29. Because Debtor is responsible for 47% of the health care expenses, per the Decree, Debtor owed $1,974.49. Debtor did not present sufficient evidence to rebut Creditor's claims as to the unpaid medical expenses. Accordingly, the Court will find that Creditor has allowed claims for both the unpaid child support and medical expenses as of the petition date.

Next, the Court will turn to whether such claims constitute a domestic support obligation. Domestic support obligations are nondischargeable pursuant to § 523(a)(5). A domestic support obligation is defined under § 101(14A) as a debt which is owed to a "spouse, former spouse, or child of the debtor . . . in the nature of alimony, maintenance or support . . . without regard to whether such debt is expressly so designated." While the Court may consider state law, the determination of whether an obligation is in the nature of support is "made by the bankruptcy court as a matter of federal bankruptcy

MEMORANDUM OF DECISION- 9

law." *In re Tracy*, 2021 WL 4143994, at *8 (Bankr. D. Idaho Sept. 9, 2021). The Court must determine the parties' intent in establishing a financial obligation and whether it was intended as "support," or something else.

> While determining an obligation's nature and function requires a "totality of the circumstances" approach, relevant factors may include a divorce decree's language, the parties' financial circumstances when the obligation was established, whether one party or another receives the marital property, the periodic nature of payments under the obligation, whether the obligation terminates upon the death or remarriage of the recipient, and the difficulty of the recipient to subsist without the payments.

*In re Aguirre*, 2012 WL 632400 (Bankr. D. Idaho Feb. 27, 2012).

The Court concludes two components of Creditor's claim constitute domestic support obligations. The language of the Decree indicates both the unpaid child support and medical expenses were in the nature of support. *See* Ex. 100 at p. 6 (noting the state court can exercise discretion to apportion the incurred medical expenses "in some percentage other than that in the existing support order"). Further, both the child support and medical expense obligations are familial obligations meant to provide support for Debtor's minor children. *See Shaver v. Shaver*, 736 F.2d 1314, 1315–16, n.3 (9th Cir. 1984) (noting the "overriding public policy" of § 523(a)(5) is to safeguard the enforcement of familial obligations and protect minor children from potential neglect). Accordingly, because Creditor has provided sufficient evidence that Debtor owed $9,459.79 in unpaid child support and $1,974.49 in unpaid medical expenses, and because such claims constitute a domestic support obligation within the meaning of

MEMORANDUM OF DECISION- 10

§ 523(a)(5), Creditor has an allowed, nondischargeable claim in the amount of $11,434.25.[6]

### b. Debts From the Failure to Turnover Personal Property

Creditor also asserts Debtor owes her $15,454 for the failure to turn over personal property as ordered in the Decree. In a state court filing attached to her proof of claim, Creditor enumerates the property Debtor has failed to turn over:

    (a) 2006 Chevrolet pickup
    (b) Yamaha four-wheeler
    (c) Boat
    (d) Colt 1911
    (e) Walther PPK
    (f) Remington Sportsman 58
    (g) .22 mag revolver
    (h) .25 piston (2)
    (i) 10/.22 rifle
    (j) 10.22 rifle
    (k) USMC 2 shot bell gun

Each of these items were awarded to Creditor in the Decree. Ex. 100 at pp. 14-18.

While Creditor asserts this property is worth $15,454, the state court did not, in fact, assign a value to any of these pieces of property. At the hearing, Debtor did not provide sufficient evidence to refute Creditor's assertions that Debtor has failed to turn over these items, but rather only objected to Creditor's attempt to classify such debt as a domestic support obligation as well as argue that the value of the items had never been determined.

---

[6] The Court heard some argument and testimony from the Debtor that he had paid some or all of the child support after the petition date. This Court is adjudicating the amount of support due as of the petition date. Whether any amount of this claim was paid thereafter is left to the parties and/or the state court to determine.

MEMORANDUM OF DECISION- 11

The Court concludes the proof of claim is prima facie evidence of the fact the property was awarded to Creditor and has not been turned over by Debtor. On the other hand, the valuation of that property remains at issue as the values have never been adjudicated and are directly disputed by Debtor. Accordingly, the Court determines Creditor has an allowed claim for the failure to turn over the items of property enumerated in the Decree, but will permit the state court, as more fully discussed below, to determine the value of those items as of the date of the Decree.

Next, the Court turns to the issue of the nondischargeability of the claim for the property, as Debtor has objected to the designation of the debt as a domestic support obligation. Creditor concedes this debt likely would not constitute a domestic support obligation under § 523(a)(5), and instead argues the debt is nondischargeable as one arising out of a separation agreement under § 523(a)(15). Because this Court concludes that the state court is the proper forum to determine the property's value, it will take up the question of dischargeability of that debt following entry of the state court's findings.

    c.    **Unpaid and Omitted Debts**

The remaining components of Creditor's claim consist of an unpaid debt allocated to Debtor under the Decree for $1,248.50, as well as certain debts omitted from the Decree. The Court will turn first to the unpaid, but allocated debt. In the Decree, Debtor was allocated the debt to Driscoll Smith. Ex. 100 at ¶ 19. Specifically, the Decree provides "[t]he parties' debts shall be divided as set forth in Attachment 'C' hereto. Each party shall hold the other nonassuming party free and harmless from any liability for any debt assumed by her or him." *Id.* This portion of the Decree created a debt, which is

MEMORANDUM OF DECISION- 12

defined as a "liability on a claim." § 101(12). A claim is defined, in part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). Thus, the Decree allocated the Driscoll Smith debt to Debtor, and by virtue of the hold harmless provision in the Decree, created a debt owed by Debtor to Driscoll Smith.

The proof of claim asserts that Creditor paid $1,249.50 to Driscoll Smith and in opposing the proof of claim, Debtor did not provide any evidence to refute Creditor's assertion. Accordingly, because she paid the debt to Driscoll Smith as provided in her proof of claim, Creditor is entitled to an allowed claim for $1,249.50.[7]

Next, the Court turns to the question of dischargeability of this debt. As discussed above, § 523(a)(15) makes nondischargeable any debt "to a spouse, [or] former spouse … of the debtor … that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record …." Because the Decree allocated this debt to Debtor, this is a liquidated debt in the amount of $1,249.50 incurred by Debtor in connection with a divorce decree and is therefore not dischargeable in this bankruptcy.

Creditor also alleges Debtor is liable for several debts which were omitted from the Decree, including two liens on the house which Creditor was awarded. The omitted

---

[7] The Decree provides the debt to Driscoll Smith is in the amount of $1,543.28. Exs. 100 & 101 at Attachment C. The evidence supports that Creditor paid $1,249.50 toward this debt. The difference is immaterial to the issues presented here.

MEMORANDUM OF DECISION- 13

liens include a debt to O'Neal for $45,538.55 and a debt to Erickson for $1,627.10. Creditor asserts Debtor is liable for half of such liens, totaling $23,582.83. Further, Creditor alleges Debtor is liable for $6,028.19 in additional omitted debts to other creditors that were not liens on the house. Because these were omitted from the Decree, the state court has not allocated these debts among the Debtor and Creditor. In essence, Creditor is asking this Court to allocate these omitted debts. To this end, 28 U.S.C. § 1334(c)(1) provides:

> Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

The Court

> should consider several factors in evaluating discretionary abstention: (1) the extent to which state law issues predominate over bankruptcy issues; (2) the difficultly of [sic] unsettled nature of applicable law; (3) the presence of a related proceeding in state court or other nonbankruptcy court; and (4) the likelihood that the commencement of the proceeding in bankruptcy court involved forum shopping by one of the parties.

2016 WL 5874828, at *4 (citing *Siragusa v. Siragusa (In re Siragusa)*, 27 F.3d 406, 408 (9th Cir. 1994)). Here, state law clearly dominates over bankruptcy issues, as the claims relate to disputes stemming from the parties' divorce decree. As noted in *Soelberg*, "[i]t is appropriate for bankruptcy courts to avoid incursions into family law matters 'out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'" *Id.; see also In re Emmerson*, 2012 WL 1109033, at *5 (9th Cir. BAP April 3, 2012) (noting federal courts are cautioned against involvement in issues of domestic relations).

MEMORANDUM OF DECISION- 14

Here, the parties are inviting the Court to allocate the liability on community debts previously omitted in the Decree. If the Court were to accept this invitation, it would tread on the state court's prerogative to determine how the parties' community debts, not previously addressed, should be allocated. Further, while the Court is skeptical of Creditor's argument that the award of the house was in the nature of support and thus the debts arising from the attached liens are nondischargeable under § 523(a)(5), the state court is in a more appropriate position to determine the intent of the parties and the court at the time the division of property and debts occurred.

Accordingly, the Court will abstain from determining the amount and allocation of the omitted debts and whether they were intended as support. Once the state court has made the requisite findings, the parties may return to this Court for a determination of whether the omitted debts are nondischargeable under either § 523(a)(5) or § 523(a)(15).

**B.    Motion for Stay Relief**

Creditor has also filed a motion for relief from the automatic stay so that she may proceed with the state court litigation. Doc. No. 34. Initially, the Court will note that under § 362(b)(2)(B), the stay is not in place as to "the collection of a domestic support obligation from property that is not property of the estate."[8] As such, the Court need not grant stay relief to permit Creditor to collect on the unpaid child support and medical expense claims because the Court has determined such claims are domestic support

---

[8] The Court is also mindful of the possibility that the stay may not be in effect at all, as Debtor has received a discharge in the bankruptcy case. Doc. No. 23. However, no party objected to the stay relief motion on this basis, and in order to provide clarity for the state court, this Court will resolve Creditor's motion for relief from stay on the merits.

MEMORANDUM OF DECISION- 15

obligations. *Khurana v. State of Idaho (In re Khurana)*, No. 13-20058-TLM, 2019 WL 1431916, at *2 (Bankr. D. Idaho Mar. 29, 2019), *aff'd,* No. 3:19-CV-00117-RHW, 2020 WL 254531 (D. Idaho Jan. 16, 2020) ("under § 362(b)(2)(B), the collection of [domestic support] obligations [] is excepted from the automatic stay.")

Relief from the automatic stay may be granted "for cause." § 362(d)(1). Cause is determined on a case-by-case basis. *In re Lyon*, 2019 WL 2866558, at *3 (Bankr. D. Idaho July 2, 2019). The factors which a bankruptcy court may consider when determining if cause exists to lift the automatic stay to permit litigation in a different forum are similar to the considerations for discretionary abstention. *Id.*; *see In re Gibson*, 349 B.R. 54, 58 (Bankr. D. Idaho 2006). The factors include "'considerations of judicial economy, the expertise of the state court, prejudice to the parties, and whether exclusive bankruptcy issues are involved.'" *Lyon*, 2019 WL 2866558, at *3 (quoting *Shin v. Altman (In re Altman)*, 2018 WL 3133164, *6 (9th Cir. BAP June 26, 2018)).

For the reasons discussed in relation to abstention, the Court determines there is cause to grant stay relief to allow the parties to return to state court and litigate the issues surrounding the interpretation and application of state law and the Decree regarding the amount and nature of the omitted debts, as well as the value of the property not turned over in accordance with the terms of the Decree. As such, the Court will grant Creditor's motion for stay relief to permit the parties to return to state court and litigate those remaining issues. This grant of stay relief does not include the determination of whether the omitted debts are dischargeable in Debtor's bankruptcy, which issue is reserved for this Court. To be clear, however, the liquidated debt of $1,249.50, which the Debtor did

MEMORANDUM OF DECISION- 16

not pay, is not subject to any stay as this Court determined that it was not dischargeable under § 523(a)(15). Creditor may collect this amount from the Debtor without violating any stay or discharge injunction.

## CONCLUSION

The Court finds Creditor has an allowed claim for $9,459.79 for unpaid child support and $1,974.49 for Debtor's share of their child's medical expenses. Both of these claims are nondischargeable as domestic support obligations under § 523(a)(5). Moreover, the Court finds Creditor has an allowed claim for $1,249.50 for an unpaid debt which was allocated to Debtor in the Decree but paid by Creditor, and such debt is nondischargeable under § 523(a)(15) and is now not subject to any stay under § 362(a).

In addition, the Court finds Creditor has a claim for Debtor's failure to turnover items of personal property allocated to Creditor in the Decree, but as the state court did not value that property, such valuation is within the purview of the state court. Accordingly, this Court will abstain as to determination of the values of the property not turned over in accordance with the Decree, as well as the amount and nature of debts omitted from and unallocated in the Decree.

/ / / / / /

MEMORANDUM OF DECISION- 17

The Court will grant Creditor's motion for relief from the automatic stay to permit the parties to return to state court to resolve these issues but will deny the stay relief motion as to the dischargeability of the property not turned over, as well as the omitted and unallocated debts. The determination of dischargeability must be made by this Court following the necessary adjudication by the state court. The Court will enter an order consistent with this Decision.



DATED: November 1, 2022

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION- 18